E-FILED
Monday, 14 May, 2012 02:17:24 PM
Clerk, U.S. District Court, ILCD

FILED
MAY 14 2012
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| BRADLEY GONZALES, | ) |
| Plaintiff, | ) |
| | ) Case No. 12-cv-2131 |
| v. | ) |
| | ) Jury Trial Requested |
| WAL-MART STORES, INC., | ) |
| SUSAN FRANK, BRIAN INSLEY, | ) Equitable Relief Sought |
| LARRY MCCLURE, | ) |
| Defendants. | ) |

## COMPLAINT

NOW COMES the Plaintiff, BRADLEY GONZALES, by and through his attorney, GERALD W. SMITH of the SMITH LAW FIRM, P.C., and for his Complaint against the Defendants, WAL-MART STORES, INC., SUSAN FRANK, LARRY MCCLURE, and BRIAN INSLEY states as follows:

### NATURE OF CLAIM

1. This is a civil action under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. Sec. 2615(a)(1), alleging interference with the exercise of Plaintiff's rights under the FMLA by Defendants, and section 2615(a)(2) for discrimination and retaliation against Plaintiff based on Plaintiff's exercising or attempting to exercise his FMLA protected rights.

### THE PARTIES

2. Plaintiff, BRADLEY GONZALES, is an adult male residing in Champaign County, Illinois, and at all times relevant to this Complaint, was employed by DEFENDANT WAL-MART STORES, INC. ("Defendant Walmart") at store number 1734, located at 2610 N. Prospect Avenue, Champaign, Illinois.

1

3. Defendant Walmart is a Delaware corporation doing business in multiple locations within Illinois and Champaign County. At all times material to this Complaint, Defendant Walmart was an employer within the meaning of 29 U.S.C. § 2611(4) because Defendant Walmart was a corporation employing 50 or more employees for each working day during each of 20 or more calendar workweeks in the calendar year of and previous to the events described in this Complaint.

4. Individual Defendant Susan Frank ("Defendant Frank") was, at all relevant times, a supervisor of Plaintiff and an employer acting in the interest of Defendant Walmart under the FMLA.

5. Individual Defendant Larry McClure ("Defendant McClure") was, at all relevant times, a supervisor of Plaintiff and an employer acting in the interest of Defendant Walmart under the FMLA.

6. Individual Defendant Brian Insley ("Defendant Insley") was, at all relevant times, a managerial agent and an employer acting in the interest of Defendant Walmart under the FMLA.

## JURISDICTION AND VENUE

7. Jurisdiction conferred upon this Court by 29 U.S.C. § 2617(a)(2) and 28 U.S.C. § 1331. Venue is properly laid under 28 U.S.C. § 1391 because all actions complained of herein occurred in this judicial district.

8. This action has been filed within the established two-year statute of limitations pursuant to 29 U.S.C. § 2617(c).

## FACTUAL ALLEGATIONS

9. Defendant Walmart hired Plaintiff on or about July 28, 2009.

10. On or about March 1, 2011, Plaintiff was informed by Defendant McClure that he needed to provide an updated "Certification of Health Care Provider for Associate's Serious Health Condition (FMLA)" for renewal of his FMLA leave.

11. On or about March 8, 2011, Plaintiff provided Defendant Walmart with a "Certification of Health Care Provider for Associate's Serious Health Condition (FMLA)" signed by Plaintiff's physician, Randall A. Megeff, M.D.

12. In said "Certification of Health Care Provider for Associate's Serious Health Condition (FMLA)," Dr. Megeff indicated that Plaintiff's condition would "cause episodic flare-ups periodically preventing the associate from performing his/her job functions;" that the frequency of the episodes could be "1-10 times per . . . month;" and the duration of each episode could be "1-7 day(s) per episode." The document also stated, "[D]uring an episode, patient is unable to work at all" and "He is unable to work during episodes and immediately afterward."

13. Some of Plaintiff's episodes appear suddenly and with only a few seconds warning. Other episodes provide 2-3 minutes advance notice. Episodes may consist of severe dizziness (vertigo), nausea, chest pain, shortness of breath, severe headache, uncontrollable crying, syncope (near loss of consciousness), elevated heart rate and blood pressure, trembling, and feeling that his surrounding environment is moving and/or closing in on him (akin to a panic attack). During these episodes, any movement by Plaintiff exacerbates his symptoms, Plaintiff's focus, attention, and thoughts are almost exclusively on the manifestations of the condition, and Plaintiff's perception of time and cognitive abilities are severely impaired. Following each episode, Plaintiff is exceptionally fatigued and requires rest and sleep to recover. Plaintiff's immediate symptoms typically subside sufficiently after approximately

90-120 minutes for him to either drive home or call someone to take him home. More severe episodes can take up to five (5) hours for the symptoms to subside sufficiently for the Plaintiff to return home. The residual affects (i.e., extreme fatigue) of Plaintiff's episodes can exist for many hours after the episode becomes manifest.

14. Plaintiff's symptoms first appeared in May 2008, and from that time forward, he has been obtaining medical treatment for this condition through Carle Clinic and its physicians until the date of his termination by Defendant Walmart.

15. Defendant Walmart was aware of Plaintiff's condition and history of these uncontrollable episodes. Plaintiff has experienced these episodes intermittently since beginning work at Defendant Walmart, with many episodes becoming manifest while at work. Management was aware of Plaintiff's condition and agreed to charge to FMLA the time off work as a result of these episodes.

16. On days when Plaintiff's episodes occur before he has departed for work, Plaintiff has complied with Defendant Walmart's published Attendance/Punctuality Policy and called in on the Associate Information Line to inform management of his pending absence.

17. On April 9, 2012, at approximately 9:45 PM, Plaintiff arrived at the facility approximately fifteen (15) minutes prior to the beginning of his 10:00 PM shift, had not clocked in yet, and was just entering the doors to the supercenter facility when he experienced the onset of an episode. Plaintiff immediately moved to and sat down on one of the benches immediately inside the entrance to the Walmart Supercenter.

18. Having no cellphone and no telephone in the immediate area where he was sitting with which to call the Associate Information Line and being unable to walk or move significantly, Plaintiff asked another employee (i.e., either "Ray" or "James") to notify

management what had happened and that Plaintiff would not be able to work his assigned shift that night. At that moment, Plaintiff put forth his best effort to inform management of his current situation. After sitting on that bench for a period of time perceived to be approximately two (2) hours, and with Plaintiff earnestly believing that management had been informed of his current status, Plaintiff regained sufficient energy to depart the facility and drive himself home.

19. Plaintiff worked his scheduled shift on April 10 and April 12, 2011. Plaintiff was not scheduled to work on April 11, 2011.

20. Plaintiff was not aware that management had not been informed of his situation of April 9, 2011, until the beginning of his shift on April 12, 2011; nor was Plaintiff informed, counseled, advised, or otherwise made aware that he had violated Defendant Walmart's Attendance/Punctuality Policy on April 9, 2011.

21. On April 13, 2011, Plaintiff experienced another debilitating episode as he was in the associate break area, waiting to clock in to begin his shift. On this date, Plaintiff was taken by wheelchair to the Customer Service area to wait for the episode to subside. Plaintiff does not recall which employee or member of management he spoke with that night, but believes he informed management of his situation and not being able to work his shift.

22. Plaintiff was not scheduled to work April 14, 2011.

23. On April 15, 2011, Plaintiff experienced another episode as he was near the time-clock waiting to clock-in. Rather than completing his clock-in and being penalized for "time theft", knowing that he would not be able to work his shift as scheduled, Plaintiff did not clock in. Plaintiff was taken by wheelchair to the Customer Service area by another employee (believed to be Cashundra Wiggins). This episode was a particularly difficult and

lengthy one, with the symptoms not subsiding in the usual amount of time. After what the Plaintiff believes to be two (2) or three (3) hours, he asked an employee to let management know of his non-improving situation. Defendant Frank spoke with Plaintiff and asked if he needed to go to the hospital, to which Plaintiff replied that he did not. After what the Plaintiff perceived to be two (2) or three (3) more hours, his symptoms had subsided sufficiently to allow him to walk and eventually drive himself home.

24. On April 16, 2011, with the residual effects of the previous day's episode still present, Plaintiff called in on the Associate Information Line to inform Defendant Walmart that he would not be able to work his shift that day, consistent with Defendant Walmart's Attendance/Punctuality Policy.

25. On April 17, 2011, Plaintiff showed up for his scheduled work shift, but the time-clock was not recognizing his badge. Subsequently, Plaintiff was informed by Defendant McClure that Plaintiff's employment was terminated due to violating Defendant Walmart's Attendance/Punctuality Policy. This termination received the approval of Defendant Insley.

26. Subsequent to termination of his employment, Plaintiff applied to the Illinois Department of Employment Security (IDES) for unemployment compensation benefits.

27. On May 19, 2011, the IDES mailed a notice of determination of benefits to Plaintiff that stated, in effect, Plaintiff was discharged because of "misconduct" and that Plaintiff was therefore ineligible for unemployment compensation benefits.

28. On June 1, 2011, Plaintiff appealed the IDES notice of determination of benefits to a referee telephone hearing.

29. On June 20, 2011, said telephonic hearing was conducted with an IDES hearing referee presiding and Plaintiff and Defendant McClure participating.

30. On June 21, 2011, the IDES hearing referee issued his decision to deny unemployment benefits based, to a large degree, on three statements made under oath by Defendant McClure (1) incorrectly implying that Plaintiff had given management no "explanation or defense for not calling in on those days", (2) incorrectly implying that Plaintiff had been given verbal warnings by another assistant manager and Defendant McClure on April 9, 2011, and was issued written remedial coachings, and (3) incorrectly implying that Plaintiff could have called the Associate Information Line many hours after his scheduled shift had begun, to include after Plaintiff had returned home, and by using said Associate Information Line, Plaintiff would not have been charged with an unauthorized absence.

31. On July 5, 2011, Plaintiff appealed the referee's decision to the IDES Board of Review, which ultimately upheld the referee's decision to deny unemployment benefits. The Board of Review's decision, as stated in its September 29, 2011 report, was based almost entirely upon the incorrect and misleading statements of Defendant McClure.

## COUNT I
### Violation of FMLA, 29 U.S.C. § 2615 (Interference)

32. Plaintiff incorporates by reference all preceding paragraphs.

33. The FMLA at 29 U.S.C. § 2615(a)(1) prohibits an employer from "interfere[ing] with . . . the exercise or the attempt to exercise, any right" provided by the FMLA.

34. Under the FMLA, Plaintiff was entitled to intermittent medical leave and reinstatement to his job or a substantially equivalent position upon his return from leave.

35. Defendant Walmart, by and through the individually named defendants in this action, interfered with Plaintiff's FMLA rights by refusing to recognize and honor Plaintiff's use of FMLA leave when he became disabled and unable to work on April 9, 13, and 15, 2011,

ultimately terminating his employment for exercising or attempting to exercise his FMLA rights.

36. Individually named defendants had a direct role in interfering with Plaintiff's FMLA rights and the termination of Plaintiff in retaliation for his having exercised rights protected by the FMLA and are jointly and severally liable.

WHEREFORE, Plaintiff prays for the following relief:

a. Declare Defendant Walmart in violation of the statutory provisions under which Plaintiff brings this action, and enjoin Defendant Walmart, its officers, employees, agents and all persons in active concert or participation with Defendant Walmart from engaging in any discriminatory employment practices;

b. Order that Defendant Walmart reinstate Plaintiff in the position that he held prior to his termination on April 17, 2011, however, at a different but nearby Walmart Supercenter (e.g., Savoy or Urbana, Illinois) and that he be compensated at the rate of pay that he earned prior to that date, plus any bonuses and pay increases Plaintiff would have likely received;

c. Order Defendant Walmart to make Plaintiff whole by compensating him for past lost earnings and benefits of employment in accordance with 29 U.S.C. § 2617(a)(1)(A)(i)(I);

d. Order Defendant Walmart to pay Plaintiff interest on his damages in accordance with 29 U.S.C. § 2617(a)(1)(A)(ii);

e. Order Defendant Walmart to pay Plaintiff a liquidated damages amount equal to the sum of paragraphs c. and d. above, in accordance with 29 U.S.C. § 2617(a)(1)(A)(iii);

f. Award Plaintiff his costs in this action, including reasonable attorney's fees, costs, and expert witness fees in accordance with 29 U.S.C. § 2617(a)(3);

g. Order payment of pre-judgment and post-judgment interest, as appropriate, on all amounts due to Plaintiff as a result of this action;

h. Order individual Defendants Frank, McClure, and Insley jointly and severally liable with Defendant Walmart;

i. Order such other and further relief as the Court deems just and proper.

## COUNT II
### Violation of FMLA, 29 U.S.C. § 2615 (Retaliation)

37. Plaintiff incorporates by reference all preceding paragraphs.

38. The FMLA at 29 U.S.C. § 2615(a)(2) provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]."

39. Under the FMLA, Plaintiff was entitled to intermittent medical leave and reinstatement to his job or a substantially equivalent position upon his return from leave.

40. Defendant Walmart, by and through the individually named defendants in this action, discriminated and retaliated against Plaintiff by terminating his employment for exercising or attempting to exercise his FMLA rights.

41. Defendant Walmart, by and through the individually named defendants in this action, discriminated and retaliated against Plaintiff by misleading the IDES referee and Board of Review, regarding Plaintiff's exercise or attempt to exercise his FMLA rights, resulting in the denial of Plaintiff's unemployment compensation.

42. Individually named defendants had a direct role in interfering with Plaintiff's FMLA rights and the termination of Plaintiff in retaliation for his having exercised rights protected by the FMLA and are jointly and severally liable.

WHEREFORE, Plaintiff prays for the following relief:

a. Declare Defendant Walmart in violation of the statutory provisions under which Plaintiff brings this action, and enjoin Defendant Walmart, its officers, employees, agents and all persons in active concert or participation with Defendant Walmart from engaging in any discriminatory employment practices;

b. Order that Defendant Walmart reinstate Plaintiff in the position that he held prior to his termination on April 17, 2011, however, at a different but nearby Walmart Supercenter (e.g., Savoy or Urbana, Illinois) and that he be compensated at the rate of pay that he earned prior to that date, plus any bonuses and pay increases Plaintiff would have likely received;

c. Order Defendant Walmart to make Plaintiff whole by compensating him for past lost earnings and benefits of employment in accordance with 29 U.S.C. § 2617(a)(1)(A)(i)(I);

d. Order Defendant Walmart to pay Plaintiff interest on his damages in accordance with 29 U.S.C. § 2617(a)(1)(A)(ii);

e. Order Defendant Walmart to pay Plaintiff a liquidated damages amount equal to the sum of paragraphs c. and d. above, in accordance with 29 U.S.C. § 2617(a)(1)(A)(iii);

f. Award Plaintiff his costs in this action, including reasonable attorney's fees, costs, and expert witness fees in accordance with 29 U.S.C. § 2617(a)(3);

g. Order payment of pre-judgment and post-judgment interest, as appropriate, on all amounts due to Plaintiff as a result of this action;

h. Order individual Defendants Frank, McClure, and Insley jointly and severally liable with Defendant Walmart;

i. Order such other and further relief as the Court deems just and proper.

## COUNT III
### Intentional Infliction of Emotional Distress

43. Plaintiff incorporates by reference all preceding paragraphs.

44. Throughout the period April 9 – June 20, 2011, Defendants committed the following extreme and outrageous, willful and wanton acts against the Plaintiff:

    a. Intentionally interfered with Plaintiff's attempt to exercise his FMLA rights;

    b. Wrongfully terminated Plaintiff's employment in retaliation for the Plaintiff's attempt to exercise his FMLA rights;

    c. Provided false statements under oath to the IDES referee in an attempt to preclude the Plaintiff from collecting any unemployment compensation.

45. Defendants' extreme and outrageous willful and wanton conduct was done with intent to cause severe emotional distress to the Plaintiff or with a reckless disregard of the high likelihood of causing severe emotional distress.

46. Defendants' extreme and outrageous, willful and wanton conduct caused Plaintiff to suffer severe emotional distress.

WHEREFORE, Plaintiff prays for the following relief:

a. Order Defendants to pay Plaintiff damages in the amount equal to the sum of lost earnings and benefits of employment had the Plaintiff not been discharged;

b. Award Plaintiff his costs in this action, including reasonable attorney's fees, costs, and expert witness fees;

c. Order payment of pre-judgment and post-judgment interest, as appropriate, on all amounts due to Plaintiff as a result of this action;

d. Order individual Defendants Frank, McClure, and Insley jointly and severally liable with Defendant Walmart;

e. Order such other and further relief as the Court deems just and proper.

## JURY DEMAND

47. Plaintiff demands a trial by jury.

Respectfully submitted,

/s/ Gerald W. Smith
Attorney for the Plaintiff


Smith Law Firm, P.C.
1002 Commercial Drive, Suite #5B
P.O. Box 46
Mahomet, IL  61853
(217) 586-3700
(217) 586-3755 (fax)
email:  gwsmith@gwsmithlawfirm.com
ARDC No.   6304036

12

STATE OF ILLINOIS        )
                         ) SS
COUNTY OF CHAMPAIGN      )

### VERIFICATION

BRADLEY GONZALES, the Plaintiff, under penalties as provided by Rule 11 of the Federal Rules of Civil Procedure, hereby verifies that he has read the foregoing Complaint and that the matters contained therein are true and correct to the best of his knowledge.

Dated:  May 11, 2012                    /s/ Bradley Gonzales
                                        BRADLEY GONZALES

Subscribed and sworn to before me this 11th day of May, 2012.

                                        /s/ Gerald W. Smith
                                        Notary Public

Prepared By:
SMITH LAW FIRM, P.C.
1002 Commercial Drive, Suite 5B
P.O. Box 46
Mahomet, IL  61853
(217) 586-3700
(217) 586-3755 (fax)
email: gwsmith@gwsmithlawfirm.com
ARDC No.  6304036